1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

ROBIN DIRK HORDON, an individual,

9

Plaintiff,

No.  3:20-cv-05464-RJB

10

v.

SECOND AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

11

KITSAP COUNTY SHERIFF GARY
SIMPSON, in his personal and official capacity,
KITSAP COUNTY, a municipal corporation
KITSAP COUNTY SHERIFF'S OFFICE, a
division of Kitsap County, a municipal
corporation, DEPUTY MIKE MERRILL, an
individual, DEPUTY ANDREW AMAN, an
individual, DEPUTY BRAD TROUT, an
individual, DEPUTY TONY GRAHAM, an
individual, DEPUTY BENJAMIN TEETS, an
individual,
DEPUTY TIMOTHY YOUNG, an individual,
DEPUTY JUSTIN CHILDS, an individual,

12
13
14
15
16
17
18

Defendants.

19
20

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff Robin Hordon files this

21

Second Amended Complaint.

22

## I.    INTRODUCTION

23
24

1.1     This case arises out of the unlawful and unconstitutional arrest of a private citizen

25

exercising his First Amendment rights to free speech.  Responding to a call from officials from

26

the Port of Kingston, three Kitsap County Sheriff's Deputies, Defendants Mike Merrill, Andrew

27

Aman, and Brad Trout, arrested Plaintiff Robin Hordon, an activist who was engaged in political

SECOND AMENDED COMPLAINT - 1

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

free speech activities in "Mike Wallace Park," a quintessential public forum, during the Port's

Fourth of July Celebration on July 4, 2019.  The Deputies did so under standard operating

procedure and policy of Kitsap County and its Sheriff's Office, on the direction and advice of

Deputy Prosecuting Attorney John Madden, and at the behest of the Port of Kingston Defendants

for violation of their "sign policy," which at the time purported to disallow any sign on Port

property without prior permission of the Harbormaster.

       1.2     Also in accordance with the policies of Kitsap County and its Sheriff's Office,

Deputy Trout then issued a "Criminal Trespass Warning" that purported to ban Mr. Hordon from

the public park and other Port property "FOREVER/NO EXPIRATION."  The Trespass

Warning does not provide notice of how this permanent ban can be appealed or challenged, and

in fact there is no opportunity to be heard for individuals subjected to such Trespass Warnings to

have such bans removed.  Thus, such Trespass Warnings are issued under Kitsap County policy

and authority at the unbridled discretion of an individual Sheriff's Deputy.

       1.3     After Deputy Trout booked Mr. Hordon, he set bail at $50,000.  This amount was

excessive and forced Mr. Hordon to spend a night in the Kitsap County Jail.  The next day, Mr.

Hordon hired a private attorney to defend him against criminal charges.  A judge released Mr.

Hordon on July 5, 2019 on his own recognizance.

       1.4     Several days later, on July 18, 2019, Mr. Hordon returned to Mike Wallace Park

with his attorney for purposes of preparing his criminal defense.  Port Officials called 9-1-1 to

report a criminal trespass.  Defendant Deputy Teets responded and spoke with Mr. Goff and

Defendants Harbormaster Raymond Carpenter and Executive Director Greg Englin, who

confirmed that they did not want Mr. Hordon in Mike Wallace Park.  But by the time Deputy

Teets arrived, Mr. Hordon and his lawyer had left.

       1.5     Three days later, on July 21, 2019, Mr. Hordon returned to Mike Wallace Park to

take some pictures for purposes of preparing his criminal defense.  Again Marina Lead Austin

Goff called 9-1-1, and again Deputy Teets responded to the park, this time with Defendant

Deputy Justin Childs.  By the time they arrived, Mr. Hordon was no longer in the park, but

SECOND AMENDED COMPLAINT - 2

oa131501

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1    Deputy Teets and Deputy Childs found him a few blocks away and arrested Mr. Hordon for

2    "criminal trespass," assisted by Defendant Deputy Timothy Young.  Deputy Teets then booked

3    Mr. Hordon into the Kitsap County Jail on two counts of second-degree trespass and set bail at

4    $10,000.  This amount was excessive and forced Mr. Hordon to spend another night in jail.   The

5    Deputies' sole ground for arresting Mr. Hordon was the prior Criminal Trespass Warning issued

6    by Deputy Trout on July 4, 2019.

7         1.6     Kitsap County then prosecuted Mr. Hordon for two counts of criminal trespass,

8    and the Sheriff has confirmed its effect in writing. Mr. Hordon has incurred legal fees in

9    preparing his defense.  His defense team filed a Motion to Dismiss on Monday, January 20,

10   2020, arguing that Mr. Hordon was arrested in violation of the First Amendment.  A few days

11   later, prior to filing a response to the Motion, a Kitsap County Deputy Prosecuting Attorney

12   voluntarily dismissed the case without prejudice.  Kitsap County could decide to prosecute Mr.

13   Hordon for those same charges any time during the applicable statute of limitations.  So not only

14   was Mr. Hordon banned from Mike Wallace Park "FOREVER," he lives in fear of being

15   prosecuted any day, at the whim of Kitsap County.

16        1.7     The acts described above and in greater detail below violate the First, Fourth,

17   Eighth, and Fourteenth Amendments to the United States Constitution.  All defendants have

18   violated and suppressed Mr. Hordon's First Amendment right to free speech.

19                              **II.    PARTIES**

20        2.1     Plaintiff ROBIN DIRK HORDON is an individual residing in Kitsap County in

21   the State of Washington.

22        2.2     Defendant KITSAP COUNTY SHERIFF GARY SIMPSON is an individual sued

23   in his official capacity as the elected Sheriff of Kitsap County, and in his personal capacity.  He

24   resides in Kitsap County and at all times relevant was the Kitsap County Sheriff acting within the

25   scope of his employment and under color of state law. Sheriff Simpson is a policymaker of

26   Kitsap County with respect to the County's "Criminal Trespass Warning" policies and program

27   as well as the policies and practices governing the setting of pre-arraignment bail.

SECOND AMENDED COMPLAINT - 3

oa131501

2.3    Defendant KITSAP COUNTY is a municipal corporation formed under the laws of the State of Washington located in the Western District of Washington.

2.4    Defendant KITSAP COUNTY SHERIFF'S OFFICE is a subdivision of Kitsap County, a county within the State of Washington and a municipal corporation located in the Western District of Washington.  References to Kitsap County in this complaint cross-refer to the Kitsap County Sheriff's Office, and vice-versa.

2.5    Defendant DEPUTY MIKE MERRILL is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.6    Defendant DEPUTY ANDREW AMAN is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.7    Defendant DEPUTY BRAD TROUT is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.8    Defendant DEPUTY TONY GRAHAM is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.9    Defendant DEPUTY BENJAMIN TEETS is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.10    Defendant DEPUTY TIMOTHY YOUNG is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under color of state law.

2.11    Defendant DEPUTY JUSTIN CHILDS is an individual who at all times relevant was a Kitsap County Sheriff's Deputy acting within the scope of his employment and under

SECOND AMENDED COMPLAINT - 4

oa131501

1    color of state law.

2        2.12    Plaintiff originally sued the Port of Kingston, a municipal corporation formed

3    under the laws of the State of Washington, and three of its officials, Harbormaster Raymond

4    Carpenter, Executive Director Greg Englin, and Marina Lead Austin Goff.    The Port of

5    Kingston immediately revoked it's "signs policy," and the Port defendants soon reached a

6    resolution with Plaintiff.  The Port has since revised its "signs policy."

7                              **III.    JURISDICTION AND VENUE**

8        3.1    This Court has jurisdiction pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. §§

9    1331 and 1343.

10        3.2    Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C.

11    § 1391 because at least some of the Defendants reside in this judicial district and because the

12    events and omissions giving rise to the claims alleged here occurred within the Western District

13    of Washington.

14                              **IV.    FACTUAL ALLEGATIONS**

15        4.1    The Port of Kingston is a "Port District" located in Kingston, Washington, an

16    unincorporated community located in Kitsap County.  A "Port District" is a municipal

17    corporation created by State law "for the purposes of acquisition, construction, maintenance,

18    operation, development and regulation within the district of harbor improvements, rail or motor

19    vehicle transfer and terminal facilities, water transfer and terminal facilities, air transfer and

20    terminal facilities, or any combination of such transfer and terminal facilities, and other

21    commercial transportation, transfer, handling, storage and terminal facilities, and industrial

22    improvements."  RCW 53.04.010(1).

23        4.2    Port Districts are fundamentally public entities voted into being by an election of

24    the people who live in the district.  RCW 53.04.020.  They are vested with governmental

25    authority with the power to, among other things, acquire property by purchase or condemnation

26    (RCW 53.08.010), raise revenues through bonds or special assessments (RCW 53.08.050),

27    operate moorage facilities (RCW 53.08.310), establish rates and charges (RCW 53.08.070), and

SECOND AMENDED COMPLAINT - 5

oa131501

1    promulgate "regulations for the use by tenants, agents, servants, licensees, invitees, suppliers,

2    passengers, customers, shippers, business visitors, and members of the general public of any

3    properties or facilities owned or operated by it," (RCW 53.08.220).  Port Districts are governed

4    by Port Commissioners, who are publicly elected officials.  RCW 53.12.

5         4.3    The Port of Kingston is currently one of 12 Port Districts in the State of

6    Washington, encompassing 17 square miles of land at the northeastern end of the Kitsap

7    Peninsula.  The Port leases a significant portion of this land to the Washington State Ferry

8    System to operate a car and passenger ferry between Kingston and Edmonds.

9         4.4    Near the ferry dock exists "Mike Wallace Park," a public park created in about

10    1997 when the Port converted an old boatyard and repair facility into a park with public

11    restrooms, picnic tables, and a covered stage.  According to the Port's Comprehensive Plan of

12    Harbor Improvements, Mike Wallace Park is "home to most of Kingston's large, outdoor

13    community events, including the Farmers Market, Concerts in the Cove, the Fourth of July

14    Celebration in the summer, and Kingston Cove Christmas."

15         4.5    The Port of Kingston has a set of published "Rules and Regulations," which are

16    available on its website.  https://portofkingston.org/wp-content/uploads/2019/02/Rules-and-

17    Regulations-FINAL-updated-Nov.-28-2018.pdf  Those Rules and Regulations purport to govern

18    all manner of conduct on "Port property" and at "Port facilities," including the "post[ing]" of

19    signs.   At the time this lawsuit was originally filed, the Rules stated that "Signs may be posted in

20    designated Port areas only after receiving the Harbormaster's approval."  What constitutes a

21    "sign" or a "post[ing]" was not defined, and there were no criteria by which the Harbormaster

22    considered whether such a posting may be approved.  That approval was entirely within the

23    discretion of the Harbormaster.  The Port's Rules and Regulations did not otherwise mention or

24    directly govern free speech activities, demonstrations, gatherings, or protests.

25         4.6    The "Kingston 4th of July Celebration" takes place in Mike Wallace Park each

26    year on July 4, touting itself as the "longest continuously running 4th of July celebration West of

27    the Mississippi."  The Celebration is planned and operated by the "Kingston Fourth of July

SECOND AMENDED COMPLAINT - 6

oa131501

1    Celebration" corporation, a Washington non-profit organization.  The Celebration features a
2    parade, a "fun zone" for kids, a music festival, a fun run, and evening fireworks.  The
3    Celebration occupies a large area of Kingston, including Mike Wallace Park and the area around
4    the Kingston Village Green Community Center.  It is open to the public and does not require an
5    entrance fee.

6        4.7    Plaintiff Robin Hordon is a life-long peaceful civil activist.  In 2001-2002, while
7    living in Reno, Nevada, Mr. Hordon participated in the Reno Anti War Coalition (RAWC) where
8    he developed the concept of "Civil Informationing," which sought to remedy some of the
9    weaknesses of "protests" and marches.  Civil Informationing involves public display of peaceful
10   and thought-provoking messages with the goal of engaging members of the public in civil
11   discourse about discrete topics.  Mr. Hordon's displays are typically free-standing signs with a
12   base, and measure between 5-8 feet high and 2-3 feet wide, with some signs attached together for
13   a total width of 5-10 feet.  His displays have typically focused on the topics of women's rights,
14   Native American rights and values, healthcare as a human right, environmental preservation and
15   conservation, anti-war, voting and democracy, and the expansion of democratic socialism.  Mr.
16   Hordon and his signs are well known to many, including Kitsap County Deputies.  He drives a
17   distinctive blue van that is known to the community and Kitsap County Deputies.

18       4.8    Mr. Hordon has practiced Civil Informationing in cities throughout the country
19   and has done so all around the Puget Sound region for over a decade, including over 40 times at
20   Mike Wallace Park in Kingston.   Over the years, Mr. Hordon has found this method of activism
21   to be both effective and rewarding, as it builds bridges and provokes dialogue rather than
22   fomenting conflict. To be effective, Mr. Hordon seeks out public events and gatherings of people
23   who are on their own time, such as at parades, holiday events, fairs, or musical shows.

24       4.9    In that vein, Mr. Hordon sought to engage in Civil Informationing on July 4,
25   2019, at Kingston's annual Fourth of July Celebration event.  As he had done in prior years, he
26   displayed five large display signs along the parade route that were designed to provoke thought
27   and civil discourse.  This day, Mr. Hordon had chosen signs that said "Green Peace – Yes to

SECOND AMENDED COMPLAINT - 7

oa131501

1   Both," "Save Earth," "Elect Matrilineal Governances," and "VOTE – Save Democracy."

2       4.10    That afternoon, after the parade, Mr. Hordon moved his displays to Mike Wallace

3   Park, where the crowds from the parade route and other events had migrated to listen to music

4   and wait for the evening's fireworks display.  He transported them in his van and parked near the

5   stage while he unloaded three of them.

6       4.11    As he was setting up the display signs off to the side of the stage, he was

7   approached by two Port officials, who told him to remove the display.

8       4.12    No park visitors or members of the public had complained about the display signs.

9   The signs were not blocking the view of the stage and were not interfering with pedestrian

10  traffic.

11      4.13    Harbormaster Carpenter showed him the "Signs" Rule that purported to give him,

12  the Harbormaster, the discretion to decide what signs he would approve.  Mr. Hordon refused to

13  remove the signs.

14      4.14    Harbormaster Carpenter accused Mr. Hordon of using profanity and smelling of

15  alcohol.  But, Harbormaster Carpenter did not tell Mr. Hordon to stop using profanity or to stop

16  smelling like alcohol; rather, he was concerned with Mr. Hordon's signs.

17      4.15    Rather than simply allow Mr. Hordon to carry on peacefully displaying his signs

18  and engaging in civil discourse on matters of public concern, Harbormaster Carpenter decided to

19  call the police to forcibly remove Mr. Hordon and his signs from Mike Wallace Park.

20      4.16    At about 5:25 pm, Defendants Deputy Merrill and Deputy Trout arrived at Mike

21  Wallace Park and spoke with Defendants Harbormaster Carpenter and Marina Lead Austin Goff.

22  The two Port officials showed the Deputies the Rule that required prior approval of the

23  Harbormaster prior to "posting" signs in the park.

24      4.17    With this Rule in hand, the Deputies approached Mr. Hordon and told him that the

25  Port officials were requiring him to remove his display signs.  The Deputies showed him the

26  Rule.  Mr. Hordon responded in a loud voice because he wanted witnesses to the conversation

27  with the police, firmly refusing to remove his display signs and telling the police that he had a

SECOND AMENDED COMPLAINT - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

1    legal right to engage in speech and display his signs and banner in a public forum.

2        4.18    Shortly after 5:35, Defendant Deputy Aman arrived at the stage to assist in the

3    police action against Mr. Hordon.  According to his report, he noted that Mr. Hordon had

4    "several signs displayed along the walk way [sic] that people were using."

5        4.19    According to Deputy Aman's report, Defendant Deputy Tony Graham arrived on

6    the scene at about this time.  Deputy Graham then participated in the subsequent events

7    described below, aided and abetted constitutional harms, and failed to prevent constitutional

8    harms.

9        4.20    Defendant Deputy Tony Graham arrived on the scene at about this time,

10   participated in the subsequent events, and failed to prevent constitutional harms.

11       4.21    Deputy Aman's report contains no allegation that he witnessed Mr. Hordon do

12   anything disruptive or illegal.  He then allowed Deputy Trout to use his department-issued cell

13   phone to take pictures of Mr. Hordon's signs.  Deputy Aman later sent the pictures to the

14   prosecutor's office to assist in the prosecution of Mr. Hordon for displaying his signs in the park.

15       4.22    Defendant Deputy Merrill claimed to have then consulted with Kitsap County

16   Deputy Prosecuting Attorney John Madden.  Deputy Merrill also claimed that Mr. Madden

17   advised him that the police did have the "authority to ask Hordon to remove his signs," and that

18   "Obstruction" would be the "best charge" if Deputy Merrill decided to arrest Mr. Hordon for

19   failing to do so.

20       4.23    This is corroborated by Deputy Aman, who stated in his report:

21       A short time later Sgt. Merrill advised the Prosecutor had indicated that if the
22       subject was not willing to comply with the Port of Kingston rules he either needed
         to leave or could be arrested for Obstructing. We next spoke with the
23       Harbormaster, Raymond Carpenter, who indicated he had not [sic] issue if Robin
         was willing to discuss with him where he could place his signs. He advised if
24       Robin was not willing to follow the rules he had no problem with trespassing him
25       from the property.

26       4.24    This shows that Deputies Aman, Graham, Merrill and Trout knew that the reason

27   the Port was excluding Mr. Hordon from the park was because of his signs and his refusal to

SECOND AMENDED COMPLAINT - 9

oa131501

move them to a place designated and blessed by Harbormaster Carpenter under the Port's "no signs" policy.

4.25   As officers of the law, Deputies Aman, Graham, Merrill and Trout are sworn to uphold and defend the Constitution of the United States, and are well-aware that citizens have a right to peacefully speak on matters of public concern in a public park.  These deputies know, and the law was clear, that citizens cannot be removed or excluded from public parks simply for engaging in peaceful and non-disruptive free speech activities.

4.26   Despite this knowledge, and armed with the County proclaimed policy statement from Deputy Prosecuting Attorney Madden, Deputy Merrill, accompanied by the other deputies, informed Mr. Hordon that he could either move his signs to an area acceptable to the Harbormaster or remove the signs from the park entirely, and if he refused to do one of these two things, the police would arrest him for "Obstruction."  More than once, Mr. Hordon asked what "arrested for obstruction" meant, as he wanted to know whether he was being accused of obstructing a police officer, or obstructing pedestrian traffic.  He was doing neither, but Deputy Merrill did not clarify.

4.27   Mr. Hordon did not want to be relegated to a less visible part of the park and believed he had the right to be exactly where he was.  So, he refused to either move or remove his signs.

4.28   Shortly after 6 pm, Deputies Merrill, Trout, Graham, and Aman arrested Mr. Hordon based solely on his refusal to remove his signs.  They placed him in handcuffs and escorted him to Defendant Deputy Trout's patrol vehicle for transport to the jail.  They searched Mr. Hordon's person and advised him of his Fifth and Sixth Amendment rights, the so-called "Miranda rights."  Defendant Deputy Trout then drove Mr. Hordon to the Kitsap County jail and booked him for "Obstruction," now making clear that the reason for arrest was obstruction of a police officer, and set bail at $50,000.

4.29   By arresting Mr. Hordon, Deputies Merrill, Trout, Graham, and Aman violated the First and Fourth Amendment to the United States Constitution by preventing Mr. Hordon

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

1    from engaging in peaceful and non-disruptive free speech activities in a public park.

2        4.30    Arresting a person for failure to stop engaging in peaceful and non-disruptive free

3    speech activities in a public park would chill a person of ordinary firmness from future free

4    speech activity, and has chilled Mr. Hordon from engaging in free speech activity at Mike

5    Wallace Park.

6        4.31    The directive to Mr. Hordon that he had to remove his signs or be arrested--

7    vocalized by Deputy Merrill and supported and effectuated by Deputies Trout, Aman, and

8    Graham--was not a lawful one.  Therefore, there was no probable cause to arrest Mr. Hordon for

9    "Obstructing" for failure to follow that directive.

10       4.32    Similarly, because people have a right to engage in peaceful and non-disruptive

11   free speech activities in public parks, the Harbormaster's "trespass" action excluding Mr. Hordon

12   from the park was also unlawful and unconstitutional.  Therefore, there was no probable cause to

13   arrest Mr. Hordon for "Trespass."

14       4.33    For the first time in his life, at age 71, Mr. Hordon spent a night in jail.  The

15   experience was unpleasant, and Mr. Hordon suffered emotional trauma and distress from the

16   experience.  Kitsap County then pressed Trespass charges against Mr. Hordon, who was forced

17   to hire a criminal defense attorney to defend him.  He was arraigned the next day and released on

18   his own recognizance.

19       4.34    The same day of the arrest, at "1900" hours (7 pm), Officer Trout issued a

20   "Criminal Trespass Warning" that purported to ban Mr. Hordon from entering Mike Wallace

21   Park and other Port property "FOREVER/NO EXPIRATION" for the stated reasons of "public

22   intoxication," "disturbing the peace," and "threatening Port of Kingston employees."  *See*

23   Exhibit 1, attached.

24       4.35    Kitsap County authorizes its deputies to set bail at any level, within their

25   discretion.  Kitsap County has no actual written policy governing the setting of bail, and there are

26   no criteria or factors that deputies are required to consider in doing so, including but not limited

27   to the severity of the crime alleged and a defendant's ability to pay.  It is simply a long-standing

SECOND AMENDED COMPLAINT - 11

oa131501

1  accepted practice or custom to allow and authorize deputies to set bail at any level they wish.

2  This de facto policy is arbitrary and results in a substantial number of cases in which bail is set

3  excessively and unconstitutionally high, as it was in this case - twice.

4     4.36 Defendant Gary Simpson, the elected Sheriff, is the policymaker for purposes of

5  policies related to bail setting.

6     4.37 Deputy Trout set bail at $50,000, which is excessively high, and did so in

7  retaliation for Mr. Hordon's First Amendment-protected comments, including that he (Deputy

8  Trout) would be the one "in trouble."  Mr. Hordon could not afford to pay $5,000 for a bond so

9  that he could be released.  So he spent the night in jail.

10     4.38 The next day, on July 5, 2019, Mr. Hordon was arraigned.  The Kitsap County

11  Deputy Prosecuting Attorney went even farther than the Criminal Trespass Warning and asked

12  the Court to exclude Mr. Hordon from *all Port property* (not just Mike Wallace Park) as a

13  condition of release, but the District Court Judge denied that request.

14     4.39 The Criminal Trespass Warning does not state that the owner of the property, the

15  Port of Kingston, had excluded Mr. Hordon from the property, though that was Officer Merrill's

16  justification for arresting Mr. Hordon.  And although the stated reasons for the Criminal Trespass

17  Warning were public intoxication, disturbing the peace, and threatening Port of Kingston

18  employees, these were not the Port's reasons for calling the police to have Mr. Hordon removed,

19  and are therefore mere pretext.  The sole reason for calling the police and having Mr. Hordon

20  removed from the public park was his display of signs that had not been approved by the

21  Harbormaster, and of which he disapproved.

22     4.40 The Criminal Trespass Warning warned that if Mr. Hordon should ever return to

23  Mike Wallace Park at any time "for the time period listed above" (which was "FOREVER"), the

24  police could arrest him and he would be prosecuted for "Trespass 1 RCW 9A.52.070 (gross

25  misdemeanor) or Trespass 2 RCW 9A.52.080 (misdemeanor)."

26     4.41 The Criminal Trespass Warning is a standard Kitsap County form created under

27  the authority of, and pursuant to the official policies of, Kitsap County and its Sheriff's Office.

SECOND AMENDED COMPLAINT - 12

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

1    The Kitsap County Sheriff's Office sent a copy of the Criminal Trespass Warning in this case to

2    the Kitsap County Prosecuting Attorney's office, which received it on July 6, 2019.

3            4.42    The Criminal Trespass Warning form does not provide any information about or

4    right to an appeal.  Police can simply order a person removed and banned from a particular

5    place—in this case a public park—for all eternity and that person has no ability to challenge that

6    police order.

7            4.43    Even though the stated reasons for an exclusion order can be crimes (here, "public

8    intoxication" and "disturbing the peace"), the police issue these orders before initiation of a

9    criminal prosecution and without a criminal conviction.

10           4.44    Kitsap County's Criminal Trespass Warnings are entirely extra-judicial.  No

11   judicial officer ever reviews them to see if they are factually accurate or legally justified.

12           4.45    Because Kitsap County's Criminal Trespass Warnings banning people from

13   places, including public parks, are issued prior to criminal conviction, without any opportunity to

14   challenge or appeal them, and without approval or oversight by any court, Kitsap County's entire

15   Criminal Trespass Warning system is unconstitutional and on its face violates the Fourteenth

16   Amendment's guarantees of due process of law.

17           4.46    To this day, Mr. Hordon is excluded from Mike Wallace Park under fear and

18   penalty of arrest and prosecution.  This constitutes an ongoing constitutional violation and harm

19   for which Mr. Hordon has no adequate remedy at law, and he is and will continue to be

20   prevented from entering that public park, let alone from engaging in the First Amendment-

21   protected free speech activities for which he was banned.

22           4.47    Mr. Hordon's fear of arrest and prosecution are well-founded.  Two weeks later,

23   on July 18, 2019, Mr. Hordon returned to Mike Wallace Park with his criminal defense attorney

24   to prepare his defense.  The Port's Marina Lead called 9-1-1 to report a criminal trespass based

25   on the Criminal Trespass Warning.  Defendant Deputy Teets responded and spoke with Port

26   officials, who confirmed that they did not want Mr. Hordon in Mike Wallace Park and wanted

27   him arrested based on the Criminal Trespass Warning.  But by the time Deputy Teets arrived,

SECOND AMENDED COMPLAINT - 13

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

1    Mr. Hordon and his lawyer had left.

2          4.48    In his report from July 18, 2019, Deputy Teets stated: "I reviewed a prior arrest of

3    HORDON in ILeads dated 7/4/19 for obstruction and observed that HORDON was served with a

4    trespass warning for the Port of Kingston at the jail after his arrest on 7/4/19," showing that he

5    knew the basis for the underlying arrest for failure to remove signs from the public park.

6          4.49    Three days later, on July 21, 2019, Mr. Hordon returned to Mike Wallace Park to

7    take some pictures for purposes of preparing his criminal defense.  Again, the Marina Lead

8    called 9-1-1, and again Deputy Teets responded to the park, this time with Defendant Deputy

9    Justin Childs.  By the time they arrived, Mr. Hordon had left the park.  But Deputy Teets and

10   Deputy Childs found him a few blocks away and arrested him for "criminal trespass," assisted by

11   Defendant Deputy Timothy Young.  The Deputies' sole ground for arresting Mr. Hordon was the

12   prior Criminal Trespass Warning issued by Deputy Trout on July 4, 2019, which had been

13   initiated and motivated by a desire to prohibit Mr. Hordon from engaging in free speech

14   activities.

15         4.50    Deputy Teets' report from July 21, 2019 states:

16         Hordon was last seen in his distinctive blue van by the gazebo at the Port. Goff
           stated he saw Hordon pull his van in right by the Port stage and offload some
17         signs on the walkway where he was arrested on *7/4/2019*. Hordon had two small
           signs and one large banner. He stayed approximately 10-15 minutes in that area,
18         and was alone. Hordon left one sign behind. Goff said he would provide footage
           from the Port security cameras when it was available.
19

20   This report shows that Mr. Hordon and his "distinctive blue van" were familiar to Deputy Teets.

21   On information and belief, and supported by reasonable inference from the known facts, Deputy

22   Teets knew the reason for the prior arrest and exclusion from the public park, that Mr. Hordon

23   was excluded for failing to stop engaging in free speech activities in a public park, as did

24   Deputies Child and Young.

25         4.51    Deputies Teets, Child, and Young arrested Mr. Hordon pursuant to an

26   unconstitutional "Criminal Trespass Warning" system created and maintained by Kitsap County

27   and its Sheriff's Office.   Because the Trespass Warning was itself invalid, and because Port

SECOND AMENDED COMPLAINT - 14

oa131501

officials had unlawfully and unconstitutionally excluded Mr. Hordon from the public park, there was no probable cause to arrest Mr. Hordon for "trespass."

4.52    These facts serve to underscore the unconstitutional nature of the Criminal Trespass Warning system.  The lack of opportunity to appeal or challenge the original exclusion order, in violation of the Due Process clause of the Fourteenth Amendment, led directly to and proximately caused the second unconstitutional arrest.

4.53    Deputy Teets booked Mr. Hordon into the Kitsap County Jail on two counts of trespass in the second degree, and set bail at $10,000.  This amount was excessively and unconstitutionally high.  Mr. Hordon could not afford to pay $1,000 for a bond to be released.

4.54    For the second time in his life, Mr. Hordon spent a night in jail.  The experience was unpleasant, and Mr. Hordon suffered emotional trauma and distress from the experience.

4.55    Kitsap County then prosecuted Mr. Hordon for two counts of criminal trespass. Mr. Hordon incurred legal fees in preparing his defense.

4.56    On November 26, 2019, Mr. Hordon delivered a letter to Sheriff Gary Simpson, the elected Sheriff and a policymaker for the Sheriff's office and Kitsap County with respect to the "Criminal Trespass Warning" policy and program.  Mr. Hordon explained that the Criminal Trespass Warning was violating his rights to access public property, and asked Kitsap County not to arrest him when accessing these areas.

4.57    On December 2, 2019, Defendant Kitsap County Sheriff Gary Simpson responded in a letter, stating:

> The Port of Kingston has lawfully restricted your access to Port property, property you have continued to access illegally. Therefore, deputies have the legal authority to arrest you on Port and/or State managed properties.

> You have been lawfully trespassed from Port of Kingston properties is indicated on the Criminal Trespass Warning issued to you on July 4, 2019. You refused to sign the document issued to you and have provided me with a copy for reference. This suggests you have notice of the trespass warning yet have elected to violate this order by continuing to access Port property, which includes the parking lot, driveways through the parking lot, the Port Office and the Mike Wallace Park. . . . Each time you access these properties you are committing the crime of trespass.

SECOND AMENDED COMPLAINT - 15

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

* * *

I am ordering you to cease and desist these criminal activities or you will be subject to arrest for the criminal act of trespass upon the Port of Kingston properties.

If you have further clarification or need legal advice on this matter, I suggest you seek legal counsel.

4.58    The Sheriff's December 2, 2019 letter is a statement of policy, practice or custom of Kitsap County and is a personal endorsement of an unconstitutional exclusion order from a public park.

4.59    The Sheriff's December 2, 2019 letter constitutes ratification of the Deputies' actions, and shows that they acted pursuant to County policy, practice or custom, and that County policy, practice or custom was the moving force behind the constitutional violations by the Deputies.

4.60    In the criminal matter, Mr. Hordon's criminal defense team filed a Motion to Dismiss on Monday, January 20, 2020, arguing that the Deputies arrested Mr. Hordon on both occasions in violation of the First Amendment.

4.61    A few days later, without filing any response to the Motion, the Kitsap County Deputy Prosecuting Attorney voluntarily dismissed the case without prejudice.  Because the dismissal was without prejudice, Kitsap County could decide to prosecute Mr. Hordon for those same charges any time during the applicable statute of limitations.  So not only was Mr. Hordon banned from Mike Wallace Park "FOREVER" on fear and penalty of arrest, he lives in fear of being prosecuted any day, at the whim of the Kitsap County Prosecuting Attorney.

## V.    INJUNCTION ALLEGATIONS

5.1    Kitsap County's "Criminal Trespass Warning" policy and program empowers individual Sheriff's Deputies the power to exclude any person from any place or property, including public parks, for any length of time, including "FOREVER," for any stated reason, including alleged criminal activity.  These bans are carried out without any judicial oversight or

SECOND AMENDED COMPLAINT - 16

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

approval.  The Warning form itself does not provide notice to the excluded person of any right or procedure to appeal the exclusion order, and no appellate or review process in fact exists.  As such, Kitsap County's "Criminal Trespass Warning" policy and program violate the Fourteenth Amendment's guarantee of due process of law, both substantively and procedurally.

5.2     Mr. Hordon seeks an order enjoining enforcement of the Criminal Trespass Warning issued by Deputy Trout that purports to exclude him from Mike Wallace Park in Kingston, Washington.  Because the policy and program is also procedurally unconstitutional in every case because of its failure to provide any mechanism of appeal or opportunity to be heard, Mr. Hordon also seeks an order mandating removal or amendment of Kitsap County's Criminal Trespass Warning policy and program.

## VI.   CLAIMS

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FIRST AMENDMENT

6.1     This cause of action is brought against all Defendants. The facts alleged above constitute violations of Mr. Hordon's First Amendment Right to free speech.  This cause of action is brought under 42 U.S.C. Section 1983 and the First Amendment to the United States Constitution. Among other things, this claim specifically includes Deputy Trout's retaliation against Mr. Hordon for speech through the setting of an excessively high bail.

### SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FOURTH AMENDMENT

6.2     This cause of action is brought against all seven individual Sheriff's Deputy Defendants, as well as Kitsap County and its Sheriff's Office.  Each of the individual defendants were involved in and failed to prevent the unlawful and unconstitutional arrest of Mr. Hordon without probable cause to believe he had committed any crime.  The arrests were performed pursuant to Kitsap County official policy as demonstrated by the Sheriff's letter ratifying the officers' conduct and warning Plaintiff not to enter Port property, including Mike Wallace Park, upon penalty of arrest and prosecution.  The facts alleged above constitute violations of Mr.

SECOND AMENDED COMPLAINT - 17

oa131501

1    Hordon's Fourth Amendment Right to be free from unreasonable seizure without a warrant

2    supported by probable cause.  This cause of action is brought under 42 U.S.C. Section 1983 and

3    the Fourth Amendment to the United States Constitution.

4    **THIRD CAUSE OF ACTION**

5    **VIOLATIONS OF THE FOURTEENTH AMENDMENT – PROCEDURAL DUE**

6    **PROCESS**

7            6.3      This cause of action is brought only against Defendant Kitsap County and Sheriff

8    Gary Simpson in his official capacity for their unconstitutional "Criminal Trespass Warning"

9    policy and program.  The facts alleged above constitute violations of Mr. Hordon's Fourteenth

10   Amendment Right due process of law prior to deprivation of liberty and property.  Indeed,

11   Kitsap County violates the due process rights of any person subjected to its Criminal Trespass

12   Warning policy and program.  This cause of action is brought under 42 U.S.C. Section 1983 and

13   the Fourteenth Amendment to the United States Constitution.

14   **FOURTH CAUSE OF ACTION**

15   **VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENTS –**

16   **EXCESSIVE BAIL**

17           6.4      This cause of action is brought against Defendant Kitsap County and Sheriff Gary

18   Simpson in his official capacity for their unconstitutional bail-setting policy, custom and

19   practice, and against Deputies Trout and Teets for setting Mr. Hordon's bail excessively high

20   upon booking him into jail.  The facts alleged above constitute violations of Mr. Hordon's Eighth

21   and Fourteenth Amendment rights to be free from excessive bail.  Indeed, Kitsap County violates

22   the Eighth and Fourteenth Amendment rights of many persons subjected to its bail-setting policy,

23   custom and practice.  This cause of action is brought under 42 U.S.C. Section 1983 and the

24   Eighth and Fourteenth Amendments to the United States Constitution.

25

26

27

SECOND AMENDED COMPLAINT - 18

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501

1

**FIFTH CAUSE OF ACTION**

2

**VIOLATIONS OF THE FOURTEENTH AMENDMENT – DUE PROCESS AND EQUAL**

3

**PROTECTION IN BAIL SETTING**

4      6.5      Kitsap County authorizes its deputies to set bail at any level, and this decision is

5   completely within their discretion.  Kitsap County has no actual written policy governing the

6   setting of bail, and there are no criteria or factors that deputies are required to consider in doing

7   so, including but not limited to the crime alleged and the defendant's ability to pay.  It is simply

8   a long-standing accepted practice or custom to allow and authorize deputies to set bail at any

9   level they wish.  This lack of standards constitutes arbitrary and capricious government action

10   and is a violation of substantive and procedural due process.

11      6.6      Defendants Kitsap County and Sheriff Gary Simpson also unconstitutionally set

12   money bail without meaningful considerations of other alternatives or taking into account the

13   individual's ability to pay. By setting an arbitrary monetary bail amount, Defendants

14   discriminate against those unable to pay the amount while providing a substantial benefit to

15   individuals who have the capacity to pay in violation of the Fourteenth Amendment Equal

16   Protection clause.

17      **VII.      REQUEST FOR RELIEF**

18      WHEREFORE, Plaintiff requests relief against Defendants as follows:

19      7.1      Prospective and Mandatory Injunctive relief ordering Kitsap County to remove

20   the "Criminal Trespass Warning" against Mr. Hordon and enjoining the County and its agents

21   from enforcing that Trespass Warning by arresting Plaintiff should he choose to enter the public

22   park known as "Mike Wallace Park."

23      7.2      Prospective and Mandatory Injunctive relief ordering Kitsap County to amend its

24   "Criminal Trespass Warning" policy and form to provide procedural due process protections to

25   anyone subjected to this policy, including but not limited to notice and opportunity to be heard

26   regarding the legality and propriety of any police exclusion order, and to comply with the

27   requirements of the Fourteenth Amendment to the United States Constitution.

SECOND AMENDED COMPLAINT - 19

oa131501

1       7.3     A Declaration that Kitsap County's practice for setting bail violates the Eighth

2 Amendment, Due Process and Equal Protection Clauses of the Fourteenth Amendment, that

3 Deputies Trout and Teets set Mr. Hordon's bail excessively high, and that these officers, along

4 with Kitsap County and its policymaker, Sheriff Simpson, are liable for these constitutional

5 violations.

6       7.4     Compensatory damages for violations of Plaintiff's Constitutional rights.

7       7.5     Compensatory damages for emotional distress and mental harm, including but not

8 limited to dignitary and reputational harm caused by the arrest and incarceration for two nights in

9 jail for the first time in Plaintiff's life.

10       7.6     Punitive damages from the individual Defendants on Plaintiff's claims under 42

11 U.S.C. §1983.

12       7.7     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the

13 extent otherwise permitted by law.

14       7.8     Leave to amend the pleadings to confirm to the evidence at trial; and

15       7.9     Such other relief as may be just and equitable.

16       DATED this 1st day of March, 2021.

MacDONALD HOAGUE & BAYLESS

By: _____
      Joe Shaeffer, WSBA #33273
      joe@mhb.com

By: */s/ Tiffany Mae Cartwright*
      Tiffany Mae Cartwright, WSBA #43564
      tiffanyc@mhb.com

      705 Second Avenue, Suite 1500
      Seattle, WA 98104
      (206) 622-1604

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

oa131501